UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| DUNHAM TRUST CO., as Trustee of The Darrell N. Garmann Testamentary Trust 2012, | Case No. 3:18-cv-00181-LRH-WGC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has filed a motion to dismiss the complaint of plaintiff Dunham Trust Company ("Dunham Trust"). (ECF No. 10). Dunham Trust filed a response on June 27, 2018 (ECF No. 13), and Wells Fargo timely replied on July 18 (ECF No. 14). For the reasons stated below, the Court will grant Wells Fargo's motion to dismiss.

**I. Factual Background and Procedural History**

The following facts are adduced from Dunham Trust's complaint, and for the purposes of resolving the motion to dismiss, they are presumed to be true. On December 31, 2010, Darrell N. Garmann ("Garmann") executed a will providing that his share of oil and gas holdings in McKenzie County, North Dakota, were to pass to his grandson, Rickey Garmann Jr. ("Rickey Jr."). (ECF No. 1-1 at 3). The oil and gas holdings were to be held in trust for the sole and exclusive benefit of Rickey Jr. until he turned 24. (*Id.*) At the time of the will's execution, Rickey Jr. was five years old. (*Id.*) Following Garmann's death on February 22, 2011, his family began to dispute the proper disposition of his estate. (*Id.*) Nearly a year later on February 16, 2012, the Second Judicial District Court of the State of Nevada entered a settlement order admitting Garmann's will into probate and establishing a testamentary trust. (*Id.* at 11). The settlement order affirmed the

1

creation of a testamentary trust for the benefit of Rickey Jr., with his father, Rickey Garmann Sr. ("Rickey Sr.") to act as the trustee. (*Id.*) The settlement order mandated that the financial accounts Rickey Sr. was to create in support of the trust had to be blocked accounts, meaning that Rickey Sr. needed to receive permission from the court to make disbursements in support of his son. (*Id.* at 11–12). Without the court's permission, Rickey Sr. was only allowed to withdraw funds from the account to pay income and property taxes that the trust incurred. (*Id.*) Rickey Sr. was also required to deposit all receipts to which the trust was entitled into the accounts. (*Id.*)

On August 27, 2012, Rickey Sr. set up a trust bank account with Wells Fargo at a location in Reno, Nevada. (ECF No. 1-1 at 3). Dunham Trust has alleged that when Rickey Sr. opened the bank account, Wells Fargo did not ask to see any of the trust documentation that listed the restrictions on the bank account. (*Id.* at 4). Wells Fargo also did not request the name or identity of the trust beneficiary, give Rickey Sr. the option of opening a blocked account, or ask for the terms of the trust. (*Id.*) From January 1, 2014, to October 19, 2016, Rickey Sr. misappropriated approximately $347,000 from the trust account. (*Id.*) He did this by using a bank card to pay for personal expenses (including child support payments) and by cashing royalty checks made payable to the trust. (*Id.*) The state court suspended Rickey Sr. as the trustee on August 3, 2016, and it appointed Dunham Trust as the successor trustee on December 23, 2016. (*Id.*) On October 12, 2017, the state court found Rickey Sr. personally liable for the amount that he misappropriated from the trust ($347,974.21) because he breached his fiduciary duties as trustee. (*Id.* at 20–21).

Dunham Trust filed a complaint in state court against Wells Fargo on March 26, 2018. It alleged six causes of action: (1) aiding and abetting fiduciary fraud; (2) conversion; (3) unjust enrichment; (4) negligence; (5) negligence of an agency relationship; and (6) violation of the Uniform Fiduciaries Act ("UFA"). (ECF No. 1-1 at 5–7). Wells Fargo removed the action to federal court based on diversity jurisdiction on April 26, 2018. It then filed a motion to dismiss Dunham Trust's action in its entirety on May 30, 2018. (ECF No. 10).

**II. Legal Standard**

Wells Fargo seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure

to state a claim, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; a pleading, however, that offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 667. Even so, "bare assertions. . .amount[ing] to nothing more than a formulaic recitation of the elements of a. . .claim. . .are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

### III. Discussion

Wells Fargo has grouped Dunham Trust's claims into two categories: the fiduciary claims (aiding and abetting fiduciary fraud, negligence, negligence of an agency relationship, and

violation of UFA) and the fee claims (conversion and unjust enrichment). Wells Fargo alleges that all the fiduciary claims fail because Dunham Trust's complaint does not adequately allege facts showing any actual knowledge, bad faith, or substantial assistance. (ECF No. 10 at 5). It further argues that because there is no agency relationship between a bank and its depositor, the negligence of an agency relationship claim must fail and that each of the negligence claims are barred by the economic loss doctrine. (*Id.*) As for the fee claims, Wells Fargo argues that they should be dismissed because the complaint "does not plead any facts showing the money at issue satisfies the narrow exception permitting money to be the subject of a conversion claim." (*Id.*) The Court will examine Wells Fargo's arguments in turn.

**A. Fiduciary Claims**

1. Aiding and Abetting Fiduciary Fraud (Claim 1)

Dunham Trust's first fiduciary claim is an allegation of "aiding and abetting fiduciary fraud." A search of Nevada law, however, does not reveal a valid cause of action for "aiding and abetting fiduciary fraud." Under its first claim for relief, Dunham Trust alleges, *inter alia*, that "Wells Fargo had either actual knowledge that Rickey Sr. was breaching his duty or had knowledge of facts such that a failure to prevent the breach was bad faith." (ECF No. 1-1 at 5). It also alleges that Wells Fargo benefitted from Rickey Sr.'s breach of his fiduciary duty. (*Id.*) Based on the naming of the claim and the allegations contained underneath it, the Court will construe Dunham Trust's first claim as one for civil aiding and abetting. Under Nevada law, civil liability attaches for aiding and abetting if a defendant substantially assists or encourages another's conduct in breaching a duty owed to a third person. *G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc.*, 460 F. Supp.2d 1246, 1261 (D. Nev. 2006) (citing *Dow Chemical Co. v. Mahlum*, 970 P.2d 98 (Nev. 1988)). In the context of fiduciary duties, a plaintiff must show that: (1) there was a fiduciary relationship between two parties; (2) the fiduciary breached; (3) the defendant third party knowingly and substantially participated in or encouraged the breach; and (4) the plaintiff suffered damage because of the breach. *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198 (Nev. 2014). Wells Fargo argues that Dunham Trust has not alleged sufficient facts that

4

would tend to show that it "knowingly and substantially" participated in Rickey Sr.'s breach of his fiduciary duties. (ECF No. 10 at 12).

The Court agrees. Dunham Trust has not alleged any facts indicating that Wells Fargo knew that Rickey Sr. was actively breaching his fiduciary duties, nor has it alleged any facts that would indicate that Wells Fargo substantially participated in Rickey Sr.'s misconduct. Instead of alleging specific facts, it has simply repeated the essential elements of a civil aiding and abetting claim. Dunham Trust's allegations can be contrasted with the allegations of a plaintiff in another case in this Court, *New England Life Ins. Co. v. Lee*, 2015 WL 1413391, at *7 (D. Nev. Mar. 27, 2015). There, the plaintiff alleged that one of the defendants, Hall, aided and abetted his co-defendants' breach of the fiduciary duty of loyalty that they owed to the plaintiff. *Id*. at *1. In its complaint, the plaintiff had alleged that (1) Hall knew that his codefendants were employed by the plaintiff and thus owed them a duty of loyalty, and (2) Hall substantially participated in their breach when he encouraged other employees of the plaintiff to talk to his codefendants about leaving for a rival company. *Id*. at *7. This Court denied Hall's motion to dismiss because he had made specific allegations when, taken to be true, met all the elements of aiding and abetting a breach of a duty under Nevada law. *Id*. The allegations the plaintiff made were allegations of specific conduct that Hall was alleged to have done, not merely general statements about his liability.

Dunham Trust has not made the same allegations of specific conduct. Whereas the plaintiff in *New England Life Ins. Co.* alleged that Hall's substantial participation amounted to encouraging his coworkers to talk to his codefendants about defecting to a rival company, Dunham Trust has not alleged any affirmative act by Wells Fargo indicating that it participated in or encouraged Rickey Sr.'s numerous breaches. Indeed, it has not even alleged any facts demonstrating that Wells Fargo was even aware of the breaches.

In the alternative to outright dismissal, Dunham Trust has requested leave to file an amended complaint. Federal Rule of Civil Procedure 15(a) allows for a court to grant a party leave to amend a complaint "when justice so requires," because the rule's underlying purpose is to facilitate decisions on the merits rather than pleadings or technicalities. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Leave to amend should only be denied if allowing the

1  amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the
2  moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532
3  (9th Cir. 2008). There has been no showing of such an exception here. The Court will therefore
4  grant Dunham Trust's request to file an amended complaint that lists the act(s) Wells Fargo
5  allegedly took that demonstrates it knowingly participated in or encouraged Rickey Sr.'s breaches.

### 2. Negligence (Claim 4)

Dunham Trust's next claim is for common law negligence. (ECF No. 1-1 at 6). Like in most other states, to prevail on a claim of negligence under Nevada law, a plaintiff must show that: (1) defendant owed him a duty; (2) defendant breached that duty; (3) defendant's conduct was the proximate cause of the breach; and (4) plaintiff suffered damages because of the breach. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). Wells Fargo argues that Dunham Trust's common law negligence claim should be dismissed because the UFA is controlling and replaced common law negligence claims in the context of banks and fiduciaries. (ECF No. 10 at 10–11). Dunham Trust counters by arguing that it only pleaded common law negligence in the alternative in case the Court found that the UFA did not apply. (ECF No. 13 at 9).

While Dunham Trust is correct that it may plead alternative theories of recovery, its common law negligence claim is deficient for several reasons. First, Wells Fargo correctly asserts that the UFA displaced any common law negligence claim involving a fiduciary and a bank. *See, e.g., Watson Coatings, Inc. v. American Exp. Travel Related Services, Inc.*, 436 F.3d 1036, 1040 (8th Cir. 2006) (the UFA alters "the common law with respect to the duties of parties who deal with fiduciaries"; the purpose of the UFA was to "relieve banks of their common law duty of inquiring into the propriety of each transaction.") (quoting *In re Lauer*, 98 F.3d 378, 382–83 (8th Cir. 1996)); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 904 F. Supp. 818, 820 (N.D. Ill. 1995) ("The UFA provides the bank with a complete defense when it is merely negligent.") (citing *Appley v. West*, 832 F.2d 1021, 1030 (7th Cir. 1987)); *E.F. Hutton Mortg. Corp. v. Equitable Bank, N.A.*, 678 F. Supp. 567, 583 (D. Md. 1988) ("In a State like Maryland which has adopted the UFA, mere negligence on the part of a bank in failing to detect a fiduciary's wrongdoing is not

6

actionable."). This interpretation of the UFA is supported by the plain language of the statue itself; the UFA requires the bank to have acted in "bad faith," not merely in a negligent manner, before liability is imposed on a bank. *See,* N.R.S. 162.090. Although the UFA does not define what manner of conduct constitutes "bad faith," it does define "good faith" as an act "done honestly, whether it is done negligently or not." N.R.S. 162.020. The fact that the legislature specifically excluded negligent conduct from the definition of good faith is a clear indication of its intent to supplant liability for common law negligence. In the insurance context, the Nevada Supreme Court has held that a defendant acts in bad faith when it "acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). There is little to no overlap between the definitions of negligence and bad faith.

Second, even if there was a common law negligence claim still available to Dunham Trust, its allegations still falls short. In terms of Wells Fargo's duty, Dunham Trust only states that Wells Fargo owed it a duty of care but does not explain how that duty of care arose or what the scope of it was. It also fails to explain how Wells Fargo's alleged conduct was the proximate cause of the damages it allegedly suffered rather than Rickey Sr.'s conduct being the proximate cause of its injuries. But nevertheless, the Court will accordingly dismiss Dunham Trust's negligence claim without leave to amend because there is no longer a common law claim for negligence between a bank and a fiduciary. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (leave to amend should be denied when an amendment would be futile).

### 3. Negligence of an Agency Relationship (Claim 5)

Dunham Trust's next claim is a Nevada state law claim for negligence of an agency relationship. (ECF No. 1-1 at 6). Wells Fargo argues that this claim should be dismissed with prejudice because as a matter of law, a bank and a depositor do not have an agent-principal relationship. (ECF No. 10 at 11–12). The Court agrees. It is well-established under Nevada law that the relationship between a bank and its depositors is that of debtor and creditor. *In re National Audit Defense Network*, 332 B.R. 896, 909 n. 10 (Bankr. D. Nev. 2005) (citing *McStay Supply Co. v. John S. Cook & Co.*, 132 P. 545 (Nev. 1912)). This represents the majority rule throughout the country. *See id*. Dunham Trust's naked assertion in its complaint that "Wells Fargo and the Trust

relationship was that of an agent and principal" does not pass muster. (ECF No. 1-1 at 6). In its response brief, it does not point the Court to any contradictory Nevada law or even respond to Wells Fargo's argument. Moreover, Dunham Trust has not alleged any facts that would give rise to the inference that Rickey Sr. did anything more than maintain an account at one of Wells Fargo's branches, which would give the two parties a relationship of debtor and creditor, not agent and principal. The Court will accordingly dismiss this claim with prejudice.

### 4. Violation of the UFA (Claim 6)

Wells Fargo argues that Dunham Trust's sixth claim, a violation of the UFA, fails as a matter of law because it only alleges a general violation of UFA. Wells Fargo states that the claim is deficient because it does not identify which UFA provisions are implicated, which transactions are at issue, or if Wells Fargo had actual knowledge of Rickey Sr.'s conduct. (ECF No. 10 at 7). In response, Dunham Trust argues that the federal pleading standards do not require it to "tie each allegation of breach to a specific UFA statute," and that it is only required to put Wells Fargo on notice of its claim. (ECF No. 3 at 8).

The Court once again agrees with Wells Fargo. In its complaint, Dunham Trust makes only conclusory statements about Wells Fargo's alleged violation of UFA. For instance, Dunham Trust has alleged that "[u]pon information and belief, Wells Fargo had actual knowledge that Rickey Sr. was breaching his fiduciary duty to [the trust] and to Rickey Jr." and "[u]pon information and belief, Wells Fargo had knowledge of such facts that allowing Rickey Sr. to breach his fiduciary duty amounts to bad faith." (ECF No. 1-1 at 7). These are legal conclusions concerning Wells Fargo's statutory obligations, not factual allegations. It is also not enough for Dunham Trust to state that Wells Fargo "had actual knowledge" that Rickey Sr. was breaching his fiduciary duty without providing at least some actual factual allegations of what this knowledge was and how it acquired it. "Formulaic recitation of the elements" of a claim are insufficient to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). This is precisely what Dunham Trust has done with its UFA claim. Moreover, Dunham Trust has failed to state which specific portions of the UFA Wells Fargo is alleged to have violated. Dunham Trust cannot expect Wells Fargo or the Court to comb through the UFA to determine which provisions Wells Fargo may have violated.

Not only does it fail to provide Wells Fargo with adequate notice of what provisions it is alleged to have violated, but the Court is left in the dark as well.

But as with Dunham Trust's claim for civil aiding and abetting, the Court will allow Dunham Trust an opportunity to file an amended complaint with a more detailed factual explanation for its UFA claims with appropriate references to specific provisions of the UFA.

### B. Fee Claims

#### 1. Conversion (Claim 2)

As to the first of Dunham Trust's fee claims, Wells Fargo argues that its conversion claim should be dismissed because non-specific money cannot form the basis of a conversion claim. (ECF No. 10 at 14). It argues that Dunham Trust has failed to demonstrate that specific money, rather than the transaction fees it seeks, was improperly converted. (*Id.* at 15). In response, Dunham Trust states that "[d]iscovery will be necessary to define the exact dollar amount" of the converted transaction fees. (ECF No. 13 at 11). Essentially, Dunham Trust has alleged that Wells Fargo converted a portion of the trust money when it charged transaction fees for each of Rickey Sr.'s withdrawals that violated his fiduciary responsibilities.

To prevail on a conversion claim under Nevada law, a plaintiff must show that: (1) the defendant committed a distinct act of dominion wrongfully exerted over the plaintiff's personal property; (2) the act was in denial of or inconsistent with the plaintiff's title or rights to the property; and (3) the act was in derogation, exclusion, or defiance of the plaintiff's title or rights in the personal property. *Amatrone v. State Farm Fire and Casualty Co.*, 2018 WL 772078, at *5 (D. Nev. Feb. 7, 2018) (citing *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1049 (Nev. 2000)). Conversion is an act of general intent, meaning that no wrongful intent is required, and liability is not excused by care, good faith, or lack of knowledge. *M.C. Multi-Family Development, LLC v. Crestdale Associates, Ltd.*, 193 P.3d 536, 543 (Nev. 2008). Although money cannot typically be the subject of a conversion claim, it can be where the money is identifiable, such as being set aside in a separate account or separately earmarked. *Hester v. Vision Airlines, Inc.*, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011) (citing *Lopez v. Javier Corral, D.C.*, 126 Nev. 702 (2010)).

In this case, Dunham Trust has not identified specific money at issue. The money that it alleges that Wells Fargo converted was an unidentifiable amount of money that Wells Fargo charged Rickey Sr. each time he withdrew money from the trust account or cashed checks for his personal gain. (ECF No. 13 at 11). This is not the same as a defendant taking money specifically earmarked for one purpose and using it for another. *See Hester v. Vision Airlines, Inc.*, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011) (valid claim for conversion of money where defendant airline did not pay its flight crews federal money specifically earmarked as hazard pay). Dunham Trust does not identify a specific dollar amount, which of Rickey Sr.'s transactions were made in violation of his fiduciary duties, or any other information that would allow the Court to find that specific money is at issue here. And once again, Dunham Trust's conversion section of its complaint is little more than a recitation of the elements of a conversion claim without any factual allegations. But in lieu of outright dismissal, the Court will give Dunham Trust an opportunity to amend its conversion claim with factual allegations that demonstrate that Wells Fargo converted specific money.

### 2. Unjust Enrichment (Claim 3)

Lastly, Wells Fargo requests that the Court dismiss Dunham Trust's third claim for unjust enrichment. Wells Fargo argues that there cannot be any unjust enrichment if the enrichment itself is not unjust; according to Wells Fargo, the fees it charged Rickey Sr. were not improper or unlawful, and it is allowed to collect fees for transactions even if those transactions were in violation of the account holder's fiduciary duties to a third party. (ECF No. 10 at 16). Under Nevada law, unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Chemeon Surface Technology, LLC v. Metalast International, Inc.*, 312 F. Supp.3d 944, 956 (D. Nev. 2018) (citing *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992)). The elements of an unjust enrichment claim are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) acceptance and retention by the defendant of such a benefit. *Id.* (citing *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)).

But as this Court has stated in the past, an unjust enrichment claim only lies against a defendant "who has willingly received the plaintiff's labor or goods without giving anything of equal value in return." *US Bank, N.A. v. SFR Investment Pools 1, LLC*, 2016 WL 4473427, at *11 (D. Nev. Aug. 24, 2016). Based on Dunham Trust's current complaint, it is unclear what benefit Wells Fargo received from Rickey Sr. without giving him something of equal value in return. In exchange for allowing him to maintain an account at one of its branches and make withdrawals and deposits, Wells Fargo collected a fee on each of Rickey Sr.'s transactions. The fact that Rickey Sr. made his transactions in violation of his duties as a fiduciary to his son's trust does not change the fact that he utilized Wells Fargo's services in doing so. Wells Fargo and Rickey Sr. both received a benefit, whether it was a fee for each transaction or the use of a bank's financial services. Moreover, there was an express contract between Rickey Sr. (Dunham Trust's predecessor in interest as trustee) and Wells Fargo. (ECF No. 1-1 at 16–18). It is well established that there cannot be a claim for unjust enrichment where a contract governs the parties' relationship to each other. *Kizer v. PTP, Inc.*, 129 F. Supp. 3d 1000, 1005 (citing *McKesson HBOC, Inc. v. N.Y. State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003)). Either reason is sufficient to dismiss Dunham Trust's unjust enrichment claim with prejudice, and the Court will do so accordingly.

### IV. Conclusion

IT IS THEREFORE ORDERED that Wells Fargo's motion to dismiss (ECF No. 10) is **GRANTED**.

IT IS FURTHER ORDERED that Dunham Trust's claims for negligence, negligence of an agency relationship, and unjust enrichment are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Dunham Trust has **30 days** from the entry of this order to file an amended complaint regarding its claims for civil aiding and abetting, violation of the UFA, and conversion.

DATED this 7th day of February, 2019.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE